UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 10 Civ. 8028 (RJS)

GERALDO F. MARTINEZ AND JOSEPH CUMMINGS,

Plaintiffs,

VERSUS

CAPITAL ONE, N.A.,

Defendant.

OPINION AND ORDER
March 27, 2012

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-27-12

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Geraldo F. Martinez and Joseph Cummings bring this putative class action lawsuit against Defendant Capital One, N.A., asserting claims under New York's Exempt Income Protection Act ("EIPA") and New York common law. Presently before the Court is Defendant's motion to dismiss the Amended Complaint on the grounds that there is no private right of action under EIPA. For the reasons that follow, Defendant's motion is granted.

I. BACKGROUND

A. Exempt Income Protection Act

Article 52 of the CPLR, as amended by EIPA in 2008,[1] governs the enforcement and collection of money judgments in New York state courts. N.Y. C.P.L.R. § 5201 *et seq.* While CPLR § 5222(a) permits a judgment creditor to serve a restraining notice on a bank, thereby restraining a judgment debtor's account, CPLR § 5205 protects certain classes of funds – such as social security benefits, disability benefits, and public assistance – by exempting them from collection by judgment creditors. EIPA amended CPLR § 5205 to exempt the first $2,500 of "reasonably identifiable" exempt funds in the judgment debtor's account if the exempt payments were made electronically or via direct deposit 45 days prior to the date a restraining notice was served in the banking institution. *Id.* § 5205(*l*). Section 5222 also prohibits restraint of the first $1,740, regardless of the source of the funds.

---

[1] EIPA's provisions are found in N.Y. C.P.L.R. §§ 5205, 5222, 5222-a, 5230, 5231, and 5232.

*Id.* §§ 5222(a)-(b), (i).[2] Furthermore, "[i]n the event that a banking institution served with a restraining notice cannot lawfully restrain a judgment debtor's banking institution account, or a restraint is placed on the judgment debtor's account in violation of any section of this chapter," the banking institution is not permitted to charge the judgment debtor fees. *Id.* § 5222(j).

EIPA added an entirely new section that became effective January 1, 2009, which, among other things, requires judgment debtors to be notified of available exemptions and the procedures by which they can claim those exemptions. *Id.* § 5222-a. Under the new section, a judgment creditor must serve the bank with two copies of the restraining notice, an exemption notice, and two exemption claim forms in order to impose a restraint on the judgment debtor's account. *Id.* § 5222-a(b)(1). This section also sets forth the content of the exemption notice and exemption claim form. *Id.* § 5222-a(b)(4). Failure to serve the exemption notice and forms along with the restraining notice renders the restraining notice void, and the banking institution is directed not to restrain the account. *Id* § 5222a-(b)(1).

Section 5222-a also requires banks to mail copies of the restraining notice, exemption notice, and exemption claim forms to the judgment debtor. *Id.* § 5222-a(b)(3). If the judgment debtor completes an exemption form, the bank must notify the creditor, and unless the creditor makes a timely objection, the bank must release all exempt funds from restraint. *Id.* § 5222-a(c)(2)-(3). If the bank does not receive an exemption claim from the judgment debtor within 25 days, all funds in the account

"remain subject to the restraining notice." *Id.* § 5222-a(c)(5). Nevertheless, under § 5222-a(b)(3), "[t]he inadvertent failure by a depository institution to provide the notice required by this subdivision shall not give rise to liability on the part of the depository institution."

Article 52 also sets forth procedures to resolve disputes that arise under it. Section 5239 states that

> [p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt. . . . The court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded.

N.Y. C.P.L.R. § 5239. If there are disputed issues of fact, the court is directed to order a separate trial. *Id.* Furthermore, CPLR § 5240 allows the court, "on its own initiative or the motion of any interested person," to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." The "special proceeding" takes place in a New York court that has competent jurisdiction and is familiar with the underlying judgment. *Id.* § 5221.

Section § 5222-a(h) provides that "[n]othing in this section shall in any way restrict the rights and remedies otherwise available to a judgment debtor, including but not limited to, rights to property exemptions under federal and state law."

---

[2] The exemption in § 5222(i) is tied to the federal minimum wage, so the exempt amount increases when the federal minimum wage increases.

### B. Factual Background

Defendant Capital One, N.A. ("Capital One" or "Defendant") is a major national bank, incorporated under Virginia law and headquartered in Virginia.[3] (Am. Compl. ¶ 10.) Plaintiffs Geraldo F. Martinez and Joseph Cummings, both New York residents, maintained accounts at various of Defendant's New York branches. (*Id.* ¶ 11, 14.)

On April 29, 2010, Martinez received notice from Defendant that $316.15 in his checking account had been frozen because Defendant received a restraining notice from third-party creditors. (*Id.* ¶ 12.) At the time, Martinez had $2,156.15 in his account. (*Id.*) Defendant charged Martinez a $100 processing fee associated with the restraint. (*Id.*) However, Martinez did not receive a copy of the restraining notice submitted by the creditor, nor did he receive an exemption notice or exemption claim form from Defendant. (*Id.* ¶ 13.) Instead, Martinez received a single-page notice of the restraint from Defendant, which stated "You may access funds over the amount restrained, however, ATM, telephone transfer, [and] automatic debit will be restricted until the account is released." (*Id.*)

Likewise, on January 15, 2010, Cummings received notice that $5,630.16 in one of his savings accounts had been frozen due to a restraining notice by third-party creditors.[4] (*Id.* ¶ 15.) Defendant charged Cummings a $100 processing fee and paid the third-party creditor $1,087.43, and then closed the account. (*Id.*) Another savings account in Cummings' name, which contained $240, was also restrained and funds from it were paid to Cummings' creditors. (*Id.* ¶ 16) Cummings did not receive notice of restraint for this account. (*Id.*) Defendant also restrained Cummings' checking account, which had less than $2,500 in it at the time of the restraint. (*Id.* ¶ 17.) Defendant charged a $100 processing fee associated with the restraint on this account as well, and once again provided no notice of restraint on the account. (*Id.*) As with Martinez, Defendant did not provide Cummings with a copy of the restraining notice, exemption notice, or exemption claim form in connection with the restraints on any of his accounts, and provided the same single-page notice of restraint that Martinez received in relation to the restraint placed on the first savings account only. (*Id.* ¶ 18.)

### C. Procedural History

Plaintiff Martinez initiated this lawsuit on October 21, 2010, alleging violations of EIPA and the common law. Defendant filed a motion to dismiss on December 20, 2010 in violation of the Court's individual practices. Accordingly, Defendant's motion was denied without prejudice on December 21, 2010. On February 7, 2011, Plaintiffs Martinez and Cummings filed their Amended Complaint, asserting that "Defendant has and continues to fail to abide by the terms of EIPA" by failing to ensure receipt of exemption notices and forms from judgment creditors, failing to mail notices and forms to putative Class Members, and imposing fees on putative Class Members' accounts in violation of EIPA. (*Id.* ¶¶ 47-50.) Plaintiffs also made the following state law claims: conversion, breach of fiduciary duty, fraud, unjust enrichment, and negligence. Defendants

---

[3] Unless otherwise noted, the following facts are drawn from the Amended Complaint.

[4] Plaintiffs assert that the notice informing Cummings that $5,630.16 in his savings account would be frozen was inaccurate in that Cummings had only $1,137.29 in the account at the time. (Am. Compl. ¶ 15.)

3

again filed a motion to dismiss on March 9, 2011, asserting that EIPA created no private right of action. The motion was fully briefed on April 15, 2011.

By letter dated April 18, 2011, Plaintiffs requested that the Court strike the Affidavit of Kathy Lynch ("Lynch Affidavit," Doc. No. 28), submitted in connection with Defendant's reply brief on April 15, 2011, as well as portions of Defendant's reply brief that reference the Lynch Affidavit. Plaintiffs argued that "[t]he Affidavit of Ms. Lynch far exceeds the documents appropriately considered for purposes of a motion to dismiss." Defendants replied by letter dated April 21, 2011.

At the time Plaintiffs filed their Complaint, the issue of whether a private right of action existed under EIPA was an issue of first impression. Since then, Judge Castel concluded that no such remedy existed in *Cruz v. TD Bank, N.A.*, a companion case filed the same day as the above-captioned matter. No. 10 Civ. 8026 (PKC), 2012 WL 694267 (S.D.N.Y. Mar. 2, 2012). For the reasons set forth below, the Court concurs with Judge Castel's conclusion and grants Defendant's motion.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss, a complaint must "provide the grounds upon which his claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Conversely, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint, and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98.

## III. DISCUSSION

### A. Express Private Right of Action under EIPA

To state the obvious, no language in EIPA specifically creates a right for a judgment debtor to sue a garnishee bank. This is significant, since other sections of Article 52 *expressly* establish such a right. *See* N.Y. C.P.L.R. § 5252(2) (permitting an employee to "institute a civil action for damages for wages lost as a result of a violation" of an employer discriminating against the employee on the basis of judgments brought against them).

Notwithstanding this omission, Plaintiffs nevertheless encourage the Court to find an "express" right of action in EIPA by invoking a canon of statutory interpretation identified by the Latin phrase *expressio unius est exclusio alterius*, which roughly translates to "the mention of one thing implies the exclusion of the other." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d

4

789, 794 (2d Cir. 1999); *see also* N.Y. Stat. § 240. Overlooking the fact that Plaintiffs use the term "express" inconsistently – they concede that "Article 52 does not provide an *express* private right of action against a garnishee for its failure to abide by a restraining notice" – Plaintiffs nonetheless insist that under *expressio unius*, EIPA creates an "express" private right of action that entitles them to seek relief against Defendant. (Pl. Opp'n 10 (emphasis added).) Plaintiffs' reasoning proceeds as follows: because the state legislature expressly disclaimed a private right of action against banks in N.Y. C.P.L.R. § 5222-a(b)(3), which states that "[t]he inadvertent failure by a depository institution to provide the notice required by this subdivision shall not give rise to liability on the part of the depository institution," the legislature must have intended such a private right of action "in all other instances where a depository institution fails, inadvertently or otherwise, to comply with the requirements of EIPA." (Pl. Opp'n 9.)

Judge Castel rejected an identical argument in *Cruz*, and this Court does likewise for largely the same reasons. For one thing, the *expressio unius* canon does not support creating new substantive rights – including the creation of a new private right of action – by negative inference. *See, e.g., Morales v. Cty. of Nassau*, 94 N.Y.2d 218, 223-24 (N.Y. 1999) (rejecting *expressio unius* as a basis for "creat[ing] an entirely new exemption that is not suggested by the language of the statute or its history"). To the contrary, courts have typically cited this maxim to *discourage* the expansion of rights or remedies beyond an enumerated list of items or exceptions. *See, e.g., Slattery v. United States*, 635 F.3d 1298, 1323 (Fed. Cir. 2011) (noting the "frequently stated principle of statutory construction . . . that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies" (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974))). Thus, proper application of the *expressio unius* canon in this case would preclude the "safe harbor" provision in § 5222-a(b)(3) from being applyed to other, non-specified parties – such as debt collectors – for inadvertent noncompliance with EIPA, rather than extending the liability of banks in all other situations.

Furthermore, canons such as *expressio unius* "long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose." *Herman & McLean v. Huddleston*, 459 U.S. 375, 387 n. 23 (1983). As set forth below, the Court finds that a private right of action of a debtor against a garnishee bank is inconsistent with Article 52's statutory scheme.

Finally, Plaintiffs point to CPLR § 5222-a(h) – the statute's reservation of rights provision – to argue that "EIPA itself states that a private right of action is available." (Pl. Opp'n 9.) However, CPLR § 5222-a(h) does nothing of the kind, as it merely provides that "[n]othing in this section shall in any way restrict the rights and remedies otherwise available to a judgment debtor, including but not limited to, rights to property exemptions under federal and state law." By the plain language of this provision, the rights of a judgment debtor are neither enlarged nor diminished. Put simply, this section does not purport to impose liability on a garnishee bank; rather, this section ensures that no other provision in § 5222-a will limit the remedies *otherwise available*. Plainly, a private right of action against a garnishee bank for alleged

5

violations of EIPA is not an "otherwise available" remedy under federal or state law.

Accordingly, the Court emphatically rejects Plaintiff's assertion that EIPA creates an "express private right of action" on behalf of judgment creditors against banks.

### B. Implied Private Right of Action under EIPA

Of course, where a statute does not expressly establish a private right of action, as in this case, a court may look to the overall structure of the legislation to determine if a private right of action should nevertheless be implied. Under New York law, the criteria for determining whether a statute implicitly creates a private right of action include:

> (1) Whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.

*Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (N.Y. 1989). The parties do not disagree that the first two criteria have been met: Plaintiffs are individuals for whom EIPA's benefits were enacted, and allowing a cause of action under EIPA would promote the legislative purpose of the statute. (Def. Br. 9; Pl. Opp'n 12.) Rather, the parties dispute whether a private right of action under EIPA would be consistent with New York state's overall legislative scheme.

In addressing this question, courts have recognized that a private right of action may be implied if there are no enforcement mechanisms or express remedies available, such that without an implied private cause of action, plaintiffs would have no remedy to the legislatively recognized harm. *See, e.g., Molinari v. Bloomberg*, 596 F. Supp. 2d 546, 579 (E.D.N.Y. 2009); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 429 (S.D.N.Y. 2006). However, "[w]here the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage." *Sheehy*, 73 N.Y.2d at 636; *see also Mark G. v. Sabol*, 93 N.Y.2d 710, 720-21 (N.Y. 1999) (declining to imply a private right of action in welfare legislation because "it would be inappropriate . . . to find another enforcement mechanism beyond the statute's already 'comprehensive' scheme").

Here, it can hardly be argued that the legislature has been silent with respect to civil remedies available under EIPA. Significantly, CPLR § 5239 permits "any interested person" to commence a special proceeding against a creditor "or other person with whom a dispute exists" to determine competing rights to property "[p]rior to application of property or debt . . . to the satisfaction of a judgment." Moreover, CPLR § 5240 permits "[t]he court . . . at any time, on its own initiative or the motion of any interested person, [to] make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." Furthermore, as Judge Castel observed, CPLR § 5225(b) allows a "special proceeding" by a creditor against a garnishee to retrieve property, requiring that the judgment debtor be served with notice of the proceeding and allowing a court to permit the judgment debtor to intervene in the proceeding. In addition, CPLR § 5227 permits a creditor to commence a special

6

proceeding against "any person" who "is or will become indebted to the judgment debtor" to pay the creditor a debt owed to the creditor. In the "special proceeding" contemplated under CPLR § 5227, notice must be given to the judgment debtor, and the debtor is permitted to intervene. Under CPLR § 5221(a), the "special proceedings" are intended to take place in courts that are familiar with the underlying judgments. *See* N.Y. C.P.L.R. § 5221(a). *Cf. Johnson v. Chem. Bank*, No. 96 Civ. 4262 (SS), 1996 WL 706893, at *4 (S.D.N.Y. Dec. 9, 1996) (Sotomayor, J.) (observing that, in bringing an action in federal court, plaintiff brought suit "in the wrong court").

Notwithstanding the fact that the legislature plainly provided enforcement procedures and civil remedies under Article 52, Plaintiffs nevertheless argue that "[i]f the instant lawsuits were not allowed, consumers would have no method of ensuring compliance by banks with the statute, nor a means to receive compensation for damages caused by an unlawful restraint." (Pl. Opp'n 12-13.) This argument, however, is based on an unmerited assumption about the remedies available under Article 52.

First, there is nothing in the plain language of the statute that prevents judgment debtors from invoking the procedures under Article 52 to ensure compliance by banks. Although CPLR § 5239 and CPLR § 5240 more commonly address disputes between debtors and creditors, several cases suggest that the "special proceeding" remedy is available to compel garnishee banks to adhere to their obligations under EIPA. *Cf. McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 276 (E.D.N.Y. 2011) (dismissing § 1983 claims of a judgment debtor against a garnishee bank, noting that "[b]oth CPLR Sections 5239 and 5240 provide mechanisms for challenging the validity of the Restraining Notice" and that "Plaintiff failed to avail himself of these statutory remedies"); *Johnson*, 1996 WL 706893, at *4 (concluding that "[a] bank served with a restraining notice pursuant to CPLR § 5222 has no discretion in deciding whether to honor the notice" and that "[judgment debtor] Plaintiff's remedy, if at all, may lie in a state court action under CPLR § 5239 to challenge The Bank of New York's entitlement to restrain his accounts"); *Sharon Towers, Inc. v. Bank Leumi Trust Co. of New York*, 673 N.Y.S.2d 138 (N.Y. App. Div. 1998) (entertaining a claim by the alter ego of a judgment debtor against a garnishee bank under § 5239). Plaintiffs point to no cases that specifically preclude judgment debtors from bringing a claim for injunctive relief by way of a "special proceeding" under CPLR § 5239 or § 5240 against a garnishee bank, and do not suggest in their Amended Complaint that they have pursued such redress.

Indeed, CPLR § 5239 encompasses a broad array of remedies by which "[t]he court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded." Likewise, CPLR § 5240 confers broad authority upon courts, including the power to effectively grant injunctive relief. N.Y. C.P.L.R. § 5240 ("The court may at any time . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."). Moreover, Plaintiffs' argument that CPLR § 5239 "does not allow injunctive relief, as is sought here" (Pl. Opp'n 10) is belied by cases in which courts have granted injunctive relief in special proceedings under CPLR § 5239. *See Greenpoint Mortgage Funding, Inc. v. Gletzer*, 16 Misc. 3d 1114(A), at *1 (N.Y.

7

Sup. Ct. 2007) (entertaining a "special proceeding" pursuant to CPLR § 5239 in which petitioners sought injunctive relief pursuant to CPLR § 6301); *see also Portsmouth Settlement Co. I, LLC v. Aviva USA Corp.*, 28 Misc. 3d 1219(A), at *1 (N.Y. Sup. Ct. 2010) (awarding injunctive relief in a § 5239 proceeding).

In their attempts to narrowly cabin Article 52, Plaintiffs also insist that CPLR § 5239 is an incomplete remedy because of its temporal limitation. Specifically, Plaintiffs point to § 5239, which permits an interested person to commence a special proceeding "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment." Plaintiffs read this to mean that the special proceeding must be commenced prior to the application of the *restraint*. However, an alternative reading, supported by New York case law, is that a special proceeding under § 5239 can be brought after restraint, but prior to the release of the funds. *See Lincoln Fin. Serv. v. Miceli*, 851 N.Y.S.2d 58 (Dist. Ct. Nassau County 2007) ("The phrase 'application of property or debt' refers to the actual distribution of the proceeds." (citing *Herman v. Siegmund*, 415 N.Y.S.2d 681, 682 (N.Y. App. Div. 1979)).

Looking at the legislation as a whole, which (1) provides parties with specific avenues for redress as well as broad remedies for violations of Article 52, and (2) also contemplates an express private cause of action in certain delineated situations – which do not include when a garnishee bank has allegedly violated EIPA – the New York State Legislature seems to have understood a judgment debtor's remedies to be limited to those provided by Article 52. This conclusion is bolstered by the New York Legislature's decision not to include in EIPA language similar to that found in the Connecticut statute upon which the New York legislation was based, which expressly provides judgment debtors with private causes of action against financial institutions. *See* Conn. Gen. Stat. § 52-367b(n) (2009) ("If such financial institution pays exempt moneys from the account of the judgment debtor over to the serving officer contrary to the provisions of this section, such financial institution shall be liable in an action therefor to the judgment debtor for any exempt moneys so paid and such financial institution shall refund or waive any charges or fees by the financial institution."). Clearly, the New York Legislature could have included comparable language had it intended to create such a private cause of action, and the failure to do so suggests a "conscious variance" designed to reflect that the "Legislature did not wish to create the same remedy against banks that Connecticut did." *Cruz*, 2012 WL 694267 at *10. The logical inference is that the New York Legislature intended that all disputes arising from EIPA – including those with garnishee banks – would be channeled into Article 52 special proceedings instead of private actions.

Finally, the Court's refusal to imply a private right of action under EIPA is not *inconsistent* with the purpose of the legislation. Even without a private right of action, the purpose of EIPA and Article 52 – "to allow judgment debtors to have due process, to allow judgment creditors to obtain their lawfully owed funds and to allow indigent debtors to retain a minimal amount of funds necessary for survival" (Pl. Opp'n 12) – can still be achieved under the enforcement scheme contemplated by EIPA. Ultimately, "[a] statutory command . . . does not necessarily carry with it a right of private enforcement by means of tort litigation." *Uhr v. E. Greenbush Cent. Sch. Dist.*, 94 N.Y.2d 32, 38 (N.Y. 1999). Given

8

the enforcement procedures and remedies available under Article 52, as well as the overall purpose of the legislation and the legislative history, the Court concludes that EIPA does not carry with it a private right of action.

Accordingly, Defendant's motion to dismiss Plaintiffs' EIPA claim is granted.

### C. Other State Law Claims

Plaintiffs also assert causes of action for conversion, breach of fiduciary duty, fraud, unjust enrichment, and negligence. These claims also fail as a matter of law.

#### 1. Conversion

Under New York law, "[t]o establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Nat'l Ctr. for Crisis Mgmt., Inc. v. Lerner*, 938 N.Y.S.2d 138, 138-39 (N.Y. App. Div. 2012) (citation omitted). Because funds deposited with a bank generally do not constitute "specific identifiable" funds, this principle does not apply to the bank-depositer relationship. *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000).

Plaintiffs argue that Defendant interfered with Plaintiffs' access to and use of their funds when Defendant restrained their accounts (Am. Compl. ¶¶ 53, 54), and contend that by restraining funds "specifically identifiable to Plaintiffs," the funds "no longer remained an indistinct debt owed by the Bank to Plaintiffs, but rather a distinctly identifiable set of funds which the Bank was holding for the benefit of the judgment creditor" (Pl. Opp'n 19). However, whether funds in an account are specifically identifiable or general "depends upon the mutual understanding and intention of the parties at the time such deposit is made, and a deposit made in the ordinary course of business is presumed to be general." *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 330 (2d Cir. 1992) (internal citations omitted). The depositor must prove that "the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit." *Id.* Plaintiffs offer no facts to support a conclusion that the funds deposited in their Capital One accounts constituted a "special deposit." To the contrary, the facts alleged in the Amended Complaint indicate that Plaintiffs opened their accounts and deposited funds in their accounts "in the ordinary course of business."

Accordingly, regardless of whether their funds were specifically identifiable when restrained, Plaintiffs' conversion claim fails as a matter of law because the funds were not specifically identifiable when deposited.

#### 2. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, Plaintiffs' third cause of action, Plaintiffs must allege a "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004). Plaintiffs claim that by restraining their accounts, Defendant breached a "fiduciary duty [owed] to Class Members to insure [sic] Class Members were not deprived of monies that lawfully belonged to them." (Am. Compl. ¶¶ 58, 59.) In New

9

York, however, the bank-depositor relationship "standing alone creates no fiduciary relationship between the parties." *Tevdorachvili*, 103 F. Supp. 2d at 640; *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir. 1984) (holding that the "usual" bank-depositor relationship cannot be construed as creating a fiduciary relationship).

Plaintiffs have not alleged facts to suggest that their relationship with Defendant was anything more than the "usual" bank-depositor relationship. Although Plaintiff argues that Defendant was "the party with greater information and knowledge with respect to the restraint and the statutory exemptions thereto" (Pl. Opp'n 21), Plaintiffs have provided no allegations that, in opening accounts at Capital One, Plaintiffs "reposed confidence" in Defendant and "reasonably relied on [Defendant's] superior expertise or knowledge" with regard to restraints and exemptions. *See Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14 (N.Y. App. Div. 1998) (holding that defendant bank owed a fiduciary duty to plaintiff when plaintiff relied on the bank's "expertise and reputation" and "inside connection" with regards to a specific mortgage loan).

Because Plaintiffs have not alleged that their relationship with Defendant goes beyond the "usual" bank-depositor relationship, the Court concludes that Plaintiffs have not stated a claim for breach of fiduciary duty.

### 3. Fraud

Plaintiffs also set forth a cause of action for fraud based on Defendant's failure to provide Plaintiffs with restraining notices, exemption notices, and exemption claim forms. To succeed on a fraud claim, plaintiffs must demonstrate (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) was made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Additionally, plaintiffs in federal diversity cases must satisfy the pleading standards in Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake [although m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiffs fail to meet this pleading standard. Plaintiffs allege that "Defendant made a material omission to Plaintiffs and Class Members in failing to provide them with the exemption notice and exemption claim forms" and that "Defendant was aware it had a duty to provide Plaintiffs and Class Members with the exemption notice and exemption claim forms." (Am. Compl. ¶¶ 62, 63.) But, beyond identifying the omitted documents, Plaintiffs do not identify who made such omissions or when such omissions were made. Nor do Plaintiffs allege facts giving rise to Defendant's fraudulent *intent*; Plaintiffs merely allege that Defendant was "aware" that it had a duty to provide Plaintiffs with the notices and forms. Without more, Plaintiffs have not alleged fraud with enough specificity to surmount the pleading standards in Rule 9(b).

Accordingly, Plaintiffs' fraud claim must also be dismissed.

### 4. Unjust Enrichment

Plaintiffs maintain that their fifth cause of action, for unjust enrichment, "arises wholly from the Bank's failure to comply with EIPA." (Pl. Opp'n 23.) When a plaintiff possesses no private right of action under a statute, and alleges no wrongs independent of the requirements of that statute, an unjust enrichment claim is properly dismissed as "an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 203 (2d Cir. 2005). The New York Court of Appeals' decision in *Assured Guaranty v. J.P. Morgan Investment Management, Inc.* does not change this conclusion. 18 N.Y.3d 341, 353 (N.Y. 2011) ("[A] private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute[, but] an injured investor may bring a common-law claim (for fraud or otherwise) that is not entirely dependent on the Martin Act for its viability."). Because Plaintiffs' unjust enrichment claim is "predicated solely" on Defendant's alleged violation of EIPA, Plaintiffs' unjust enrichment claim must be dismissed.

### 5. Negligence

To state a claim of negligence under New York law, plaintiffs must allege (1) a duty owed by the defendants to plaintiffs; (2) breach of that duty; and (3) injuries proximately caused by the breach. *See Gordon v. Muchnick*, 579 N.Y.S.2d 745, 746 (N.Y. App. Div. 1992). Plaintiffs allege that "Defendant acted in a negligent manner and breached its' [sic] duty to Plaintiffs and Class Members in unlawfully restraining Class Members' accounts, in imposing unlawful fees on Class Members and in failing to transmit the exemption notice, the exemption claim forms and a copy of the restraining notice to Class Members," and by "failing to require that parties seeking to impose restraints on customers' accounts submit to Defendant the exemption notice and exemption claim forms." (Am. Compl. ¶¶ 75, 76.)

However, these duties are all created by EIPA and Plaintiffs have identified no duty owed by Defendant apart from its obligations under EIPA. Because a plaintiff cannot maintain a common law negligence claim based on conduct governed by statute when that statute offers no private right of action, *see Uhr*, 94 N.Y.2d at 42, Plaintiffs' negligence claim must be dismissed.[5]

### D. Plaintiffs' Motion to Strike

Because the Court did not consider the Lynch Affidavit or the portions of Defendant's reply brief that reference it in granting Defendant's motion to dismiss, Plaintiffs' request is denied as moot.

### IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiffs' Amended Complaint is GRANTED. Plaintiffs' motion to strike is DENIED as moot. The Clerk of the Court of is respectfully requested to terminate the motion located at Doc. No. 19 and close this case.

---

[5] The Court also notes that if Defendant did not, in fact, provide notice, EIPA itself would foreclose an action based on negligence. *See* N.Y. C.P.L.R. § 5222-a(b)(3) ("The inadvertent failure by a depository institution to provide the notice required by this section shall not give rise to liability on the part of the depository institution.").

11

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: March 27, 2012
   New York, New York

\* \* \*

Plaintiffs are represented by Gabriel Oliver Koppell and Daniel Feist Schreck of the Law Offices of G. Oliver Koppell & Associates, 99 Park Avenue, Suite 800, New York, New York 10016, and Charles Wayne Juntikka, of Charles Juntikka & Associates, LLP, 350 Fifth Avenue, Suite 2212, New York, New York 10118.

Defendant is represented by Robert Stuart Plotkin of McGuire Woods LLP, 1345 Avenue of the Americas, New York, New York 10105.